IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHARON R. BALL                                                                                    PLAINTIFF

vs.                                            CIVIL NO. 04-6066

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                            DEFENDANT

## MEMORANDUM OPINION

Sharon Ball ("plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits ("DIB") under Title II of the Act.

**Background:**

The application for DIB now before this court was protectively filed on October 11, 2002, alleging an onset date of October 18, 2001,[1] due to depression and a herniated lumbar disc. (Tr. 117, 133). An administrative hearing was held on August 20, 2003. (Tr. 26-81). Plaintiff was present and represented by counsel.

On January 28, 2004, the Administrative Law Judge ("ALJ") issued a written decision finding that plaintiff's condition was severe, but did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 21). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ("RFC"), to

---

[1]However, the ALJ determined that plaintiff had continued to perform substantial gainful activity through March 2002. (Tr. 14). Therefore, he concluded that her earliest possible onset date was April 1, 2002. (Tr. 14). Records support this determination, as plaintiff indicated that she worked until March 2002. (Tr. 142, 168). Further, earnings records reveal that she earned a total of $5565.03 in 2002, earning approximately $1500 per month from January through March. (Tr. 127, 160).

lift/carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit six hours during an eight-hour workday; and, occasionally stoop and crouch. (Tr. 21). As her PRW required the performance of work-related activities precluded by her RFC, with the assistance of a vocational expert, the ALJ determined that plaintiff could still perform the positions of cafeteria/counter worker and factory assembly line checkers. (Tr. 22).

At the time of the hearing, plaintiff was fifty years old, and possessed a high school education. (Tr. 30, 32). However, she reported taking special education courses in high school. (Tr. 34). The record reveals that she has past relevant work experience ("PRW") as a dietary aide and kitchen helper/dishwasher. (Tr. 32-34, 139, 142-144).

On May 6, 2004, the Appeals Council declined to review this decision. (Tr. 6-8). Plaintiff then filed an action in this Court. (Doc. # 1). The case is presently before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

2

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d

AO72A
(Rev. 8/82)

1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's failure to properly consider plaintiff's subjective complaints. In determining whether the ALJ properly disregarded Plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted)*,* in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>   1. the claimant's daily activities;
>   2. the duration, frequency and intensity of the pain;
>   3. precipitating and aggravating factors;
>   4. dosage, effectiveness and side effects of medication;
>   5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski*, 739 F.2d at 1322 (emphasis in original).

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

In the present case, we are particularly concerned with the ALJ's failure to properly evaluate

4

the progress notes of Drs. Edward Saer, III, and McKay Hugentobler. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). In his opinion, the ALJ indicated that "[s]evere pain will often result in certain observable manifestations such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasms, the issue of assistive devices, prolonged bed rest, or adverse neurologic signs." (Tr. 19). He then indicates that there is no such evidence in the record. However, when discussing plaintiff's May 6, 2003 visit with Dr. Saer, the ALJ failed to acknowledge the complete results of that examination. (Tr. 325-326). On this date, plaintiff complained of lower back, left leg, and left foot pain. (Tr. 325). She also reported some numbness, tingling, and swelling in the foot. Plaintiff stated that her pain was usually worse in the morning, worse if she used a computer, and better if she sat in a hot tub. On examination, plaintiff was mildly tender over the left post-iliac crest. (Tr. 326). She reported some pain with side bending to the left, but did not appear to have any spasm. However, plaintiff did have some atrophy in the right leg, with proximal leg circumference on the right measuring 2.5 centimeters or less than the left. Her right ankle reflex was also diminished compared to the left. Further, plaintiff's sensation was diminished on the left, in a somewhat nonspecific distribution. Straight-leg-raising maneuvers caused pain predominately in the left buttock. (Tr. 326). X-rays showed significant disc narrowing at the L3-4 and L4-5. Dr. Saer also noted that past MRI results had revealed some bulging and post-laminectomy changes at the L4-5 on the left, as well as degenerative changes and narrowing at both the L3-4 and L4-5 levels. As such, he diagnosed her with mild stenosis, documenting no evidence of recurrent disc herniation. He did, however, indicate that the L4-5 disc could be irritating the nerve root. Dr. Saer recommend surgical treatment only as a last resort. Instead, he opted to have plaintiff

5

undergo treatment via selective nerve root blocks and transforaminal injections. (Tr. 326).

The ALJ also failed to discuss the findings of Dr. Hugentobler. On July 30, 2003, plaintiff presented at Dr. Hugentobler's office with complaints of pain in her left foot. (Tr. 318). She stated that she could not stand for any amount of time, as the pain was severe and radiated up into her ankle. On examination, Dr. Hugentobler noted severe pain to palpation of the dorsal aspect of the left foot directly over the third met cuneiform joint. He reported that the pain seemed to be more diffuse as he worked away from that area. Plaintiff also had pain localized in the area of the third met cuneiform joint. X-rays revealed some possible changes on the dorsal aspect of the midtarsal joint, a possible fracture of the Lis Franc's joint[2] with a fleck fracture, osteoarthritis changes in the third met lateral cuneiform joint, and buckling of the fourth met as it articulated with the lateral cuneiform. Therefore, Dr. Hugentobler diagnosed plaintiff with a Lis Franc's fracture[3] with osteoarthritic changes of the third met lateral cuneiform joint, as well as a possible fleck fracture of the Lis Franc's joint between the first and second metatarsal. He stated that her condition, even if it had been caught from the onset, would have required immobilization for six to eight weeks

---

[2]

> The Lis Franc's joint is a combination of joints in the middle of the foot. At the point where the long bones behind the toes, called metatarsals, connect with a grouping of small cube shaped bones, called cunieform bones, there are several joints the move together in an interlocking fashion. This grouping of interlocking joints is referred to as the Lis Franc's joint.

See Brian Carpenter, D.P.M., *Midtarsal Fracture Dislocation*, at www.podiatrynetwork.com.

[3]

> Lis Franc's fracture-dislocations can occur in many different ways. It can be caused by both a direct crushing type injury or a force applied to the metatarsal heads (ball of the foot) which both can result in displacement of the Lis Franc's joint or fractures that in involve the joint. Common causes are motor vehicle accidents, falls from heights, severe foot and ankle sprains, crushing force to the top of the foot. These injuries can occur during strenuous and competitive athletic activities.

See Brian Carpenter, D.P.M., *Midtarsal Fracture Dislocation*, at www.podiatrynetwork.com.

AO72A
(Rev. 8/82)

followed by follow-up treatment and possible fusion. Because she was experiencing so much pain, he recommended immobilization, stating that he may also consider open reduction and fixation of the third met lateral cuneiform joint. However, he advised plaintiff to discuss her treatment options with her husband. (Tr. 318).

On August 1, 2003, plaintiff had a follow-up appointment with Dr. Hugentobler. (Tr. 317). She presented with continued severe pain in her left foot. Dr. Hugentobler noted that she had no previous treatment for her Lis Franc's disruption. He then stated that he planned to treat her conservatively for the next six to eight weeks. Dr. Hugentobler placed her into a nonweight bearing boot cast and prescribed crutches.[4] (Tr. 317).

On August 13, 2003, plaintiff stated that her left foot was still hurting quite a bit. (Tr. 317). She indicated that it hurt when she was sleeping because she slept on her stomach. Although she was not scheduled to see Dr. Hugentobler again for about six weeks, due to severe pain, she made an appointment. He advised plaintiff to sleep on her stomach, but to leave her feet hanging off of the bed. As she also reported a shooting pain out of the top of her left foot, Dr. Hugentobler suspected that the dorsal cutaneous nerves were inflamed and irritated. Therefore, he gave her an injection of Depo Medrol and Xylocaine. (Tr. 317).

After reviewing this evidence, it is clear that these medical records should have been considered by the ALJ. "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic

---

[4]In fact, plaintiff was on crutches at the time of the hearing. (Tr. 52-53).

7

techniques and is not inconsistent with the other substantial evidence in the record, the opinion should be given controlling weight." *Id.* Clearly, the treatment notes from Drs. Saer and Hugentobler were not contradicted by any other evidence contained in the file, and were supported by medically acceptable evidence. Further, contrary to the ALJ's conclusions, the evidence does indicate that plaintiff had atrophy in her right leg; was placed in an immobilizer boot; and, was prescribed crutches, all factors considered by the ALJ to be indicative of severe and possibly disabling pain. Accordingly, we do not find substantial evidence to support the ALJ's decision, and believe that remand is necessary to allow the ALJ to reconsider plaintiff's subjective complaints in conjunction with a thorough reassessment of the medical evidence.

Also of significance is the fact that the record does not contain an RFC assessment from any of plaintiff's healthcare providers. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984.) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). Instead, the ALJ relied on relied on the RFC assessment of a non-examining, medical consultant, who concluded that plaintiff could perform medium level work involving only occasional stooping and crouching. (Tr. 307-315). We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Therefore, we believe that remand is also necessary to allow for further development of the record concerning plaintiff's RFC.

On remand, the ALJ is directed to address interrogatories to the physicians or counselors who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records and complete an RFC assessment regarding plaintiff's capabilities during the time period in question. The

8

physicians should also be asked to provide the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

In addition, the ALJ improperly concluded that plaintiff did not suffer from a severe mental impairment. "A majority of the Supreme Court has adopted what has been referred to as a 'de minimis standard' with regard to the step two severity standard." *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989); *Funderburg v. Bowen*, 666 F.Supp. 1291 (W.D. Ark. 1987). Accordingly, an ALJ may consider an impairment to be non-severe only if a claimant's medical impairments are so slight that it is unlikely he or she would be found to be disabled even if their age, education, and work experience were taken into account. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the vocational analysis." *Bowen*, 482 U.S. at 158.

During a mental evaluation, testing revealed that plaintiff functioned in the borderline to below average ranges, with the exception of average reading comprehension skills. (Tr. 319). The examiner also concluded that plaintiff's academic skills and depressive features could manifest in a vocational setting in the following ways: susceptibility to mistakes in written task performance, possible difficulty learning complex tasks, difficulty maintaining adequate production level if more than simple academic skills are required, difficulty with advanced computation or mathematics, difficulty with spelling tasks, depression may impact job performance, may have difficulty avoiding distractions, possible difficulty assessing consequences of decision alternatives, possible difficulty concentrating on work task, emotional intensity may impact task performance, and conflicts may

9

AO72A
(Rev. 8/82)

affect adequate task performance. (Tr. 321). Due to her reports of suicidal ideations and inability to pay for treatment, prompt referral to the local mental health center was strongly advised. (Tr. 322). Accordingly, on remand, we believe that the ALJ should re-evaluate plaintiff's mental impairment.

**Conclusion:**

Based on the foregoing, we reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 30th day of August 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)